1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6
7
8    IN THE MATTER OF THE EXTRADITION
9    OF MOHAMMAD SAFDAR GOHIR
10

)
)   2:14-mj-00314-CWH
)
)   **ORDER REGARDING**
)   **DETENTION PENDING**
)   **EXTRADITION**
)
)

11
12    On May 5, 2014, the United States filed a Complaint for Provisional Arrest with a View
13    Towards Extradition. (#1). The complaint was directed toward Mohammad Safdar Gohir and
14    requested his provisional arrest pending a formal extradition hearing. After reviewing the
        complaint, the undersigned determined the terms of the extradition treaty between the United States
15    and Germany for provisional arrest had been met and issued an arrest warrant. He was arrested on
16    May 4 and appeared before the undersigned on May 5, 2014. Subsequent hearings were held on
17    May 6, 2014, and May 12, 2014. The issues regarding bail and compliance with treaty obligations
18    have also been extensive briefed in Gohir's Brief regarding Bail and Detention (#8), filed May 9,
19    2014; the Government's Response and Memorandum in Opposition to Bail (#9), filed May 9, 2014;
20    and Gohir's Reply Brief (#11), filed May 12, 2014. After consideration of the briefing and the
21    parties arguments raised during the hearings on this matter, the undersigned ordered Gohir detained
22    pending further court proceedings for the reasons set forth herein.[1]
23

**BACKGROUND**

24    On May 5, 2014, the Government filed a complaint for provisional arrest with a view
25    towards extradition pursuant to 18 U.S.C. § 3184 and the extradition treaty between the United
26
27
28    _____

        [1] For ease of reference, the Court will refer to the United States as the "Government" throughout this
        order. Though some of the briefing refers to Gohir as "defendant", the more appropriate nomenclature under the
        circumstances is probably "extraditee." The Court will refer to him throughout this order as either "Gohir" or
        "extraditee."

States and Germany.[2]  The complaint was submitted by the United States Attorney on behalf of the "United States in fulfilling its treaty obligation to Germany."  *See* Compl. at ¶ 1.  The complaint indicates that the treaty "provides in article 16 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents[.]"  *Id.* ¶¶ 2, 3.  The complaint also indicates that "the Government of Germany has asked the United States for the provisional arrest of [Gohir] with a view towards his extradition[.]" *Id.* ¶ 4.  The complaint alleges that "according to the information provided by the requesting state" an arrest warrant was issued in Germany on May 4, 2014 "by the District Court of Frankfurt, at Frankfurt, Germany[.]" *Id.* ¶ 5.  The complaint states that Gohir "was charged with jointly-committed tax evasion . . . in violation of Fiscal Code of Germany, Section 370, subsection 1 no. 1, subsection 3 no. 2 and 5, Sections 149 and 150, subsection 2, and 34, involving tax evasion; and in violation of Sections 25 subsection 2, and 53 of the German Criminal Code, for offenses committed within the jurisdiction of Germany[.]" *Id.*  The complaint sets forth extensive factual allegations (approximately 11 pages) underlying the issuance of the warrant in Germany.  *Id* ¶ 6, pgs. 2-12.  It also references the evidence in the case, which includes: (1) accounting documents, (2) confessed statements of other convicted on similar charges implicating Gohir, (3) positive photographic identification of Gohir by witnesses, (4) seized communications between the persons accused and others, and (5) witness statements.  *Id.* at 11:19 - 12:10.  The complaint notes that the charges are extraditable under Article 2 of the extradition treaty, and that Germany "has represented that it will submit a formal request for extradition, supported by the documents specified in the treaty, within the time required under the treaty[.]" *Id.* ¶¶ 7, 9.  Based on the information set forth in the complaint, a warrant for provisional arrest issued.

**1. May 5, 2014 Hearing**

Subsequent to his provisional arrest, Gohir appeared on May 5, 2014, during the course of

---

[2] *See* Extradition Treaty with the Federal Republic of Germany, June 20, 1978, U.S. - F.R.G., 32 U.S.T 1485.

the undersigned's initial appearance calendar.[3]  Gohir indicated that he had not been provided a
copy of the complaint and had not had an opportunity to confer with his counsel.  He requested a
brief continuance so that he could review the complaint, which was granted.  He was remanded to
custody pending the continued hearing.[4]

**2.  May 6, 2014 Hearing**

Gohir appeared on May 6, 2014 for the continued hearing after having had the opportunity
to review the complaint with his retained counsel.  At the outset, the undersigned indicated his
intent to schedule an extradition hearing to determine whether to certify Gohir's extradition to
Germany.  It was further noted that this was a provisional arrest and the formal extradition request
had not yet been received.  The Government indicated that Germany would make its formal request
within the time frame permitted under the treaty.  The Government further indicated its belief that
because an extradition hearing is not technically a criminal proceeding, a separate probable cause
hearing on the arrest was not required prior to the actual extradition hearing.

Gohir argued that, rather than a probable cause hearing, the Government is required to
"authenticate" that the provisions of Article 16 of the extradition treaty had been met to
demonstrate that the Court had subject-matter jurisdiction in the first instance.  He contends that the
Court did not have subject matter jurisdiction to issue the provisional arrest because the procedural
requirements of Article 16 of the extradition treaty had not been met.  His counsel argued that the
treaty "specifically states" that there must be "some showing" that the Government of Germany has
issued the request for provisional arrest.  She further argued that the arrest warrant referenced and
set forth in the complaint was issued by the equivalent of a "county level court" and not the
German Ministry of Justice, Ministry of Defense, or any other official channel of the country of

---

[3]  Though he appeared during the initial appearance calendar, the undersigned notes that the Federal
Rules of Criminal Procedure do not apply in extradition proceedings.  *See* Fed. R. Crim. P. 1(5)(A) ("Proceedings
not governed by these rules include: (A) the extradition and rendition of a fugitive[.]").

[4]  Near the conclusion of this hearing, Gohir's counsel indicated that Gohir is diabetic and had not
received treatment for his condition prior to his appearance.  The Government indicated that Gohir would get the
necessary treatment while detained.

1   Germany.  The arrest warrant was, in Gohir's view, insufficient to support provisional arrest.

2         In response, the Government asserted that the terms of the treaty had been met when the

3   United States Department of Justice - Office of International Assistance ("OIA") was contacted by

4   the Ministry of Justice for the Federal Republic of German and the provisional arrest requested.

5   The information underlying the complaint, including the arrest warrant issued in Frankfurt, was

6   supplied by German officials in the Ministry of Justice directly to OIA.  Upon receipt, OIA relayed

7   the request and supporting information to the United States Attorney in Nevada, who drafted and

8   filed the complaint upon which the provisional arrest warrant issued.

9         Gohir maintained that the arrest warrant issued in Frankfurt, Germany and referenced in

10  support of the complaint for a provisional arrest warrant was insufficient.  Based on her own

11  independent research, Gohir's counsel proffered that the warrant was issued by the equivalent of a

12  "municipal court," not a district court.  Thus, she argued, the arrest warrant was not issued from the

13  Government of Germany and was "inconsistent with the plain language of the treaty."  She further

14  argued that the purpose of serving "diplomatic relations" was not advanced by accepting the

15  information in the complaint and was out of touch with statutory and case law.

16        Concerned that Gohir's counsel was conflating the requirements for certification of

17  extradition with those for provisional arrest, the Court inquired as to whether Gohir's counsel

18  believed there was a difference between those two.  She indicated that she did not and,

19  consequently, the complaint for provisional arrest was infirm and must be dismissed because it was

20  issued by "a court" and not the German government.  She rejected the notion that the Government

21  could proceed by proffer on the provisional arrest, arguing that the Government is required to make

22  an evidentiary showing that the terms of the treaty had been met.

23        The Government objected to the narrow construction, noting that 18 U.S.C. § 3190,

24  referenced by Gohir's counsel in support of her argument for an evidentiary showing at the

25  provisional arrest stage, only applied during the formal extradition hearing.  The Government

26  conceded that the burden of extraditability must be met during the extradition hearing, but argued

27  that it need not be met at the provisional arrest stage.  Gohir reaffirmed his position and requested

28  that the complaint be dismissed, the provisional arrest warrant quashed, and he be released from

4

1   custody.  The request was denied because the complaint for provisional arrest, on its face, satisfied

2   the requirements of Article 16 of the extradition treaty.

3       After the Court made its ruling, Gohir shifted his argument and claimed that the obligation

4   to demonstrate "urgency" under Article 16 had not been met.  He requested that he be released

5   pending additional hearings.  Arguing that the requirements of Article 16, including urgency, had

6   been met, the Government requested that Gohir be detained pending further hearings.  The

7   Government further requested that a hearing be set approximately 40 days out to allow the German

8   government to determine whether it would make a formal extradition request.  Noting the

9   heightened review for bail determinations in the extradition context, Gohir argued that special

10  circumstances supported his release, including: (1) that there is no urgency in this matter as Gohir

11  had recently traveled to Germany without incident (and without being informed of the charges), (2)

12  that he is not a flight risk, and (3) that his health mandated release.

13      After hearing the parties' arguments, the Court set a hearing for Monday, June 16, 2014.

14  Noting that the Bail Reform Act, 18 U.S.C. 3141 *et seq*. did not apply in the extradition context, the

15  undersigned indicated that Gohir did not appear to be a flight risk or danger to the community and

16  could be adequately monitored with stringent conditions.  Calling this decision "unprecedented,"

17  the Government requested a stay to allow for appeal.  The request was granted and a hearing set for

18  Monday, May 12, 2014 to allow for further briefing and argument on the issue of detention.

19  Gohir's request to be released pending the continued hearing was denied.

20      **3.  May 12, 2014 Hearing**

21          **A.  Gohir Detention Brief (#8)**

22      In his pre-hearing brief, Gohir argued that this is "an unprecedented matter . . . present[ing]

23  unusual complications regarding detention."  *See* Gohir Brief (#8) at 2: 5.  He conceded that the

24  extradition treaty was silent regarding bail.  *Id*. at 2:11-12.  He further acknowledged that the Bail

25  Reform Act did not apply, and that 18 U.S.C. § 3184 did not provide for bail.  *Id*. at 3:4-6.  He

26  further acknowledged that he must demonstrate "special circumstances" by clear and convincing

27  evidence to obtain his release and set forth several grounds he believed satisfied the "special

28  circumstances" standard.  He noted the recent trend of a "more liberal approach" in determining

whether there are special circumstances in the context of a provisional arrest. *Id*. at 4:15 - 5:5. Citing *In the Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210 (D. Nev. 1993) and *In re Extradition of Kapoor*, 2011 WL 2296535 (E.D.N.Y.), he argued that bail was appropriate in this instance because it would be available to him in Germany. *Id*. at 5:6 - 8:7. He noted that he had recently traveled to Germany and was neither arrested nor made aware of the charges. Additionally, at the time of his provisional arrest he was vacationing in the United States, not attempting to flee Germany. He reiterated that he suffers from diabetes and requires specialized care, which would be unavailable in the detention facility. Lastly, he reasserted his argument that bail was appropriate because the Government failed to produce "authenticated documentation" that the request for the provisional arrest came through the appropriate diplomatic channel.

## B. Government Brief Regarding Bail (#9)

Asserting that it is acting "in execution of its treaty responsibilities and . . . at the request of the Government of Germany[,]" the Government urged the court to detain Gohir pending submission of a formal extradition package from Germany and the actual extradition hearing. The Government noted that an extradition proceeding is not a criminal case, and that the Bail Reform Act does not apply on the determination of detention pending a formal extradition hearing. It also noted that neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply in extradition proceedings. *See* Fed. R. Crim. P. 1(5)(A) (*see supra* at n. 3); Fed. R. Evid. 1101(d)(3) (the Federal Rules of evidence "do not apply to . . . miscellaneous proceedings such as[] extradition or rendition"). The Government argued that, in the context of extradition, "[t]he overwhelming weight of authority supports the strong presumption against bail in international extradition cases." *See* Gov't Brief (#9) at 4:5-7. The Government agreed that Gohir must demonstrate "special circumstances" by clear and convincing evidence, but argued that he had not met that burden. *Id.* at 6:3-12.

The Government argued that the lack of flight risk does not, by itself, constitute a special circumstance and, if considered, should be considered separate from whatever "special circumstances" may be found to exist. Even so, the Government argued that Gohir is a risk of flight because he is deliberately absent from the charging jurisdiction–Germany. It argued further

that Gohir is known to have "extensive ties" to several countries without extradition agreements with Germany, including the United Arab Emirates and Pakistan.  The Government noted that Gohir has significant resources and is aware that several co-conspirators have already been convicted and sentenced to between three and eight years of incarceration on the charges in Germany.  The Government proffered that Gohir faces more than ten years if convicted. Notwithstanding its belief that Gohir is a risk of flight, the Government argued that it should not matter because there are no special circumstances supporting release.  It noted that the complexity of the extradition is not a special circumstance.  It also argued: (1) that Gohir's medical condition (diabetes) is not a special circumstance because there is no proof that detention would prevent treatment; (2) that the availability of electronic monitoring is not special circumstance in light of the heavy presumption against bail; and (3) that the availability of bail in Germany is not a special circumstance.  Consequently, the Government requested detention.

### C.  Gohir Reply Brief (#11)

Though not requested, Gohir filed a reply brief hours before the May 12 hearing.  It did not respond in any way to the arguments made by the Government in its briefing.  Instead, the reply constituted a renewed attempt to challenge the subject matter jurisdiction of the Court based on the premise that the German government failed to comply with the express terms of the treaty in requesting the provisional arrest.  Citing to Article 29 of the applicable treaty, Gohir insisted that the warrant issued in Frankfurt, Germany must be "authenticated by the official seal of the Federal Minister of Justice and [] certified by the competent diplomatic or consular officer of the United States in the Federal Republic Germany."  He reasserted his contention that the arrest warrant was not certified as required and, therefore, the request for provisional arrest was not instituted through the proper diplomatic channel.  He continued to attack the arrest warrant on the ground that it was issued by a magistrate judge of a local court, not the Minister of Justice of the Federal Republic of Germany.  He contends that the arrest warrant cannot satisfy Article 16 of the extradition treaty and, therefore, this Court does not have subject matter jurisdiction and the complaint should be dismissed.  He also reasserted his contention that, pursuant to 18 U.S.C. § 3190, evidence of an appropriate request for a provisional warrant must be properly and legally authenticated, which did

7

1    not occur in this instance.  Based on these arguments, he renewed his request that the complaint for

2    provisional arrest be dismissed and he be released.[5]

3    **D.  May 12, 2014 Hearing**

4    At the outset, the Court noted its prior inclination to release Gohir on his own personal

5    recognizance subject to several stringent conditions.  The Court also noted the following areas of

6    agreement between the Government and Gohir: (1) the Bail Reform Act does not apply in

7    extradition cases; (2) the extradition treaty is silent as to bail; and (3) that 18 U.S.C. § 3184 does

8    not provide for bail.  It also appeared that the parties agreed that there is a presumption against bail

9    in extradition proceedings, but that bail may be available upon a demonstration of "special

10   circumstances" by the extraditee by clear and convincing evidence combined with a showing that

11   the extraditee is neither a flight risk nor a risk to the community.  The Court also summarized the

12   arguments put forth by each party regarding bail.

13   After initial remarks, the undersigned invited argument.  The Government reaffirmed its

14   position that the requirements for a provisional arrest under the treaty had been met.  Gohir

15   reasserted his belief that the complaint for provisional arrest did not comply with the treaty

16   requirements and, therefore, must be dismissed.  Alternatively, he argued that he is likely to

17   succeed on his claim against extradition, which is a special circumstance that should be considered

18   on the bail determination.  He also restated his arguments that he is not a flight risk and is amenable

19   to bail subject to conditions.  The Government argued that Gohir's subject matter jurisdiction

20   argument is without merit.  It further argued that the treaty provides for two alternatives when

21   requesting a provisional arrest: a request through the diplomatic channel or a request made directly

22   between the United States Department of Justice and the Minister of Justice of the Federal

23   Republic of Germany.

24   After considering all the briefing and argument, the undersigned found that the

25   requirements for provisional arrest had been met.  It was further found that Gohir had not

26

27   [5] Notably, the renewed motion to dismiss did not challenge whether there was probable cause to issue
     the provisional arrest warrant.  The singular challenge was to the subject matter jurisdiction of the Court based on
28   the argument that the procedural requirements for provisional arrest had not been met.

1    demonstrated by clear and convincing evidence that there were "special circumstances" justifying

2    his release.  Thus, Gohir was detained pending submission of a formal extradition packet and

3    extradition hearing.  Thereafter, the Government represented that it would submit an explanation if

4    Germany sought the additional twenty days afforded it under the treaty to make its formal request

5    for extradition.  The Government also indicated that it would send the formal extradition packet to

6    Gohir immediately upon receipt.  The Court set a status conference for June 5, 2014, regarding the

7    need, if any, for discovery.  Citing the extradition treaty, Gohir's counsel requested a probable

8    cause hearing prior to the extradition hearing.  The Government argued the treaty does not provide

9    for a probable cause hearing.  Gohir was unable to point to any specific article within the treaty, but

10   argued that *Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986) stood for the proposition that a

11   probable cause hearing separate and apart from the extradition hearing was required.  The

12   undersigned ordered further briefing on the issue and will address it at a later date.

13                                          **DISCUSSION**

14        "The primary concern in an international extradition matter is to deliver the extraditee to the

15   requesting nation."  *In the Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1213 (D. Nev.

16   1993).  Extradition treaties create a binding obligation on the United States to surrender fugitives to

17   its treaty partners once the fugitives are found to be extraditable.  *See Wright v. Henkel*, 190 U.S.

18   40, 62 (1903).  Foreign extraditions are *sui generis* in nature, neither civil nor criminal in nature,

19   and set forth their own law.  *See e.g. Nacif-Borge*, 829 F. Supp. at 1213; *see also In re Extradition

20   of Vargas*, —F. Supp. 2d —, 2013 WL 5739198 (S.D. Tex.) (citations omitted).  The process of

21   formal extradition is governed generally by the applicable extradition treaty and the provisions of

22   the federal extradition statute, 18 U.S.C. §§ 3181-3196.  It is a diplomatic process.  *Manta v.

23   Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008).  Generally, upon receipt of an extradition request a

24   judge or magistrate judge holds an extradition hearing "to determine if the evidence is sufficient to

25   sustain the charge of extradition under the relevant treaty."  *Id*. (citing 18 U.S.C. § 3184).  If it is

26   determined at the extradition hearing that the "crime is extraditable, and that there is probable cause

27   to sustain the charge, the judge or magistrate judge must certify the extradition."  *Id.* (citations

28   omitted).  It has long been the rule that extradition treaties are construed liberally.  *United States ex

                                                9

*rel. Sakaguchi v. Kaulukukiu*, 520 F.2d 726, 731 (9th Cir. 1975) (citing *Factor v. Laubenhimer*, 290 U.S. 276, 293-94 (1933).[6]  Many treaties provide for the "provisional arrest" of a potential extraditee prior to submission of a formal extradition request.  Provisional arrests are governed under the specific extradition treaty at issue.  *See c.f.*, *Chertoff*, 518 F.3d at 1144 (language in extradition treaty regarding provisional arrest would not be interpreted to require the government to submit all of its evidence to support extradition prior to formal extradition request); *see also* 18 U.S.C. § 3184.

Here, the Government filed a complaint for provisional arrest (#1) pursuant to section 3184 and the extradition treaty between the United States and Germany.  The complaint was directed toward Gohir and requested his provisional arrest pending a formal extradition hearing.  After review, the undersigned determined the express terms of the extradition treaty regarding provisional arrest had been met and issued an arrest warrant.  Gohir was arrested and, ultimately, detained pending a formal extradition request and extradition hearing.[7]  During the course of those proceedings, Gohir, through his retained counsel, objected to the issuance of the warrant based on the argument that this Court did not have subject matter jurisdiction because the requirements for provisional arrest under the treaty had not been met.  Thus, before addressing the determination to deny bail, the undersigned will first address the challenge to subject matter jurisdiction.

**1. Subject Matter Jurisdiction**

Resolution of this issue requires interpretation of the extradition treaty between the United States and Germany.  *See* Extradition Treaty with the Federal Republic of Germany, June 20, 1978, U.S. - F.R.G., 32 U.S.T 1485.  As previously noted, it has long been the rule that extradition

---

[6]  In *Laubenheimer* the Supreme Court stated: "In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements.  Consideration which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.  For that reason, if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred."  290 U.S at 293-94.

[7]  Pursuant to section 3184 and Local Rule IB 1-9(u), the undersigned magistrate judge has authority to, and will, conduct the extradition hearing.

treaties are construed liberally. *See supra*, n. 6. The general basis of the objection is that the express terms of the extradition treaty regarding provisional arrest were not satisfied. Specifically, Gohir argues that the arrest warrant issued in Frankfurt, Germany, and used to support the complaint for provisional arrest, was not properly certified under Article 29 of the extradition treaty and, therefore, cannot form the basis for a provisional arrest warrant under the treaty or section 3184. He also argues that the request for a provisional arrest warrant was not made between the United States Department of Justice and the Minister of the Federal Republic of Germany as required under Article 16 of the treaty.

Article 16 of the extradition treaty between the United States and Germany provides as follows:

> In case of urgency, either Contracting Party may apply for the provisional arrest of the person sought before the request for extradition has been submitted to the Requested State through the diplomatic channel. The request for provisional arrest may be made either through the diplomatic channel or directly between the United States Department of Justice and the Minister of the Federal Republic of Germany.

*See* Extradition Treaty, June 20, 1978, U.S. - F.R.G., 32 U.S.T 1485, Article 16(1). There is no dispute that this subsection authorizes provisional arrest **before** a formal extradition request is submitted through the diplomatic channel. Under the express terms of Article 16, the provisional arrest "shall be terminated" if the "Requested State" does not receive the extradition request "within a period of 40 days" after the provisional arrest. *See* Extradition Treaty at Article 16(4). The "Requesting State" may apply for an additional 20 days to submit the request. *Id*.

The requirements for provisional arrest should not be confused or conflated with the requirements for the actual extradition request or hearing. By its terms, the provisional arrest is a mechanism available to the requesting state to permit it to gather evidence and prepare the formal extradition request. Consequently, Gohir's reliance on Article 29 is misplaced in the context of the provisional arrest as Article 29 addresses evidence to be admitted "in the examination of the request for extradition[.]" *Id*. The request for extradition has not been made and, therefore, by its own terms Article 29 does not apply. The same is true of Gohir's reliance on 18 U.S.C. § 3190, which specifically applies to evidence offered during the extradition hearing. As in *Chertoff*, and in

11

light of the obligation to construe extradition treaties liberally, the undersigned is not inclined to read a requirement into the treaty that is not expressly clear from the language of the treaty itself. *C.f. Chertoff*, 518 F.3d at 1144 (declining to read a requirement that the government submit all of its evidence to support extradition within the time period allotted for provisional arrest).

Other courts have reached the same conclusion regarding the need to provide certified documents at the provisional arrest stage. *See In re Extradition of Beresford-Redman*, 2010 WL 5313494 (C.D. Cal.) (holding that the provisional arrest article within the treaty did not require certified documents, whose necessity was reserved for the formal extradition request); *see also In re Extradition of Kraiselburd*, 786 F.2d 1395, 1396-97 (9th Cir. 1986) ("Under the Treaty, the extradition request must include an arrest warrant. In case of urgency, the treaty permits the requesting country to seek the fugitive's provisional arrest. A request for provisional arrest need only be accompanied be a declaration that an arrest warrant exists; it need not actually include a warrant."). Though *Beresford-Redman* and *Kraiselburd* involve different treaties, the analysis is the same. The Court should not read into the treaty requirements for provisional arrest properly reserved for the formal extradition request and hearing.

Gohir also objects to the provisional warrant on the ground that the arrest warrant identified and offered in support of the complaint for provisional arrest was not properly issued. The requirements for provisional arrest are expressly set forth in Article 16 of the treaty, which states:

> The application for provisional arrest shall state that a warrant of arrest as mentioned in paragraph 3(a) of Article 14 . . . exists and that it is intended to make a request for extradition. It shall also state the offense for which extradition will be requested and when and where such offense was committed and shall give all available information concerning the description of the person sought and his nationality. The application shall also contain such further information, if any, as would be necessary to justify the issuance of a warrant of arrest in the Requested State had the offense been committed, or the person sought convicted, in that State.

*See* Extradition Treaty, June 20, 1978, U.S. - F.R.G., 32 U.S.T 1485, Article 16(2). Gohir's objection is directed toward the arrest warrant identified within the complaint and whether it issued from an appropriate source, not whether the complaint provides the requisite information as

1  identified in Article 16(2).[8]

2          Article 16 clearly contemplates that the viability of the arrest warrant identified within a

3  complaint for provisional arrest is evaluated by reference to "paragraph 3(a) of Article 14[,]" which

4  provides in turn:

5          A warrant of arrest issued by a judge of the Requesting State and such evidence
           as, according to the law of the Requested State, would justify his arrest and
6          committal for trial if the offense had been committed there, including evidence
           proving that the person requested is the person to whom the warrant of arrest
7          refers[.]

8  *See* Extradition Treaty, Article 14(3)(a).  All that is required under Article 16 for provisional arrest

9  is an application that a "warrant of arrest **as mentioned** in paragraph 14(3)(a)" exists.  The term

10 "warrant of arrest issued by a judge of the Requesting State" is not defined within the treaty, but

11 Gohir concedes that the arrest warrant identified in the complaint was issued by a German judge.

12 He simply does not believe it was a judge with requisite authority.  The issuing judge was, in

13 Gohir's counsel's terms, a "low-level" judge.  The treaty does not identify at what "level" of the

14 judicial hierarchy within Germany the issuing judge must reside.  It simply says "a warrant of arrest

15 issued by a judge of the Requesting State."  There is no requirement anywhere within Article 16 or

16 Article 14(3)(a) that the arrest warrant must be issued by the Minister of Justice of the Federal

17 Republic of Germany.  It is sufficient that the arrest warrant exists, that it issued from a German

18 judge, and that it is intended to make a request for extradition.  Other than challenging the source of

19 the arrest warrant, no other provisions within Article 16(2) were challenged and the Court expressly

20 finds that the complaint for provisional arrest adequately sets forth the requirements for provisional

21 arrest under Article 16 of the treaty.

22          Gohir also argues that the request for provisional arrest in this case was not made through

23 the proper channels.  Article 16(1) provides two alternatives for requesting a provisional arrest:

24 ────────────────

25          [8] Gohir did not challenge probable cause in his moving papers.  He has requested a probable cause
26 hearing, for which the undersigned ordered additional briefing.  Thus, any objection based on probable cause
   underlying the complaint for provisional arrest is not yet ripe and has not yet been considered. To the extent
27 Gohir believes he has challenged probable cause, he has offered no argument or briefing on the matter.  Nor has
   he filed a habeas petition challenging the probable cause determination.  The parties are expected to file briefing
28 shortly addressing probable cause and the need, if any, for a probable cause hearing.

13

1    "The request for provisional arrest may be made either through the diplomatic channel **or** directly

2    between the United States Department of Justice and the Minister of Justice of the Federal

3    Government." *See* Extradition Treaty, Article 16(1).  Gohir has presented a shifting front on this

4    point throughout the hearings and briefing to this point.  He has claimed that the request was not

5    made through the proper "diplomatic channel."  He has also demanded that the United States

6    Attorney present evidence of an actual communication between the United States Department of

7    Justice and the Minister of Justice of the Federal Republic of Germany.  No such "evidentiary

8    showing" is necessary.

9         The complaint for provisional arrest clearly states that the United States Attorney for the

10    District of Nevada is acting pursuant to the United States' treaty obligation with Germany.  *See*

11    Compl. (#1) at ¶ 1.  The complaint, signed under oath by the Assistant United States Attorney,

12    further states that "the Government of Germany has asked the United States for provisional arrest

13    of Mohammad Safdar Gohir with a view towards extradition[.]" *Id*. at ¶ 4.  Though paragraph 4 of

14    the complaint for provisional arrest does not include the precise phrasing that a provisional arrest

15    was requested directly by the Minister of Justice of the Federal Republic of Germany from the

16    United States Department of Justice, it indicates that the German government made the request.

17    Moreover, during the hearings on this matter the Assistant United States Attorney indicated that he

18    filed the complaint based on instruction from the Department of Justice's Office of International

19    Assistance, which had received a request for provisional arrest from the Ministry of Justice for

20    Germany.  This representation, along with the language in the complaint, is satisfactory to find that

21    the provisional arrest warrant was appropriately requested under Article 16(1).  The undersigned

22    notes that several times throughout the hearings and briefings, Gohir's counsel has objected that

23    this is hearsay information and should be rejected.  The Ninth Circuit has repeatedly held that

24    hearsay statements are admissible in extradition proceedings.  *See e.g. Emami v. U.S. Dist. Court*

25    *for Northern Dist. of California*, 834 F.2d 1444, 1451 (9th Cir. 1987) (holding that an extradition

26    request may be based entirely on an investigator's affidavit summarizing other witnesses' hearsay

27    statements and information); *Barapind v. Enomoto*, 360 F.3d 1061, 1068 (9th Cir. 2004) (accepting

28    evidence "rife with hearsay" as "unsworn statements of absent witnesses may be acted upon" in the

14

extradition context) (citing *Collins v. Loisel*, 259 U.S. 309, 317 (1922)).  The Court accepts the proffer by the Assistant United States Attorney, as set forth in both the complaint and oral argument, that the provisional arrest warrant was requested through proper channels under the treaty.

Lastly, though not entirely clear, it appears that Gohir is challenging whether there was an urgent need for the provisional arrest.  Other than fleeting argument, neither side has briefed this issue.  Gohir contends that a provisional arrest requires an evidentiary showing of urgency.  The treaty provides that "[i]n the case of urgency either Contracting Party may apply for the provisional arrest of the person sought before the request for extradition has been submitted to the Requested State through the diplomatic channel."  *See* Extradition Treaty, Article 16(1).  Other extradition treaties require "urgency" before a party may apply for provisional arrest.  *United States v. Leitner* 784 F.2d 159, 160 (2d Cir. 1986).  Some courts have expressed reservation in simply accepting that an application for provisional arrest is urgent just by virtue of the fact that it is made.  *See Caltagirone v. Grant*, 629 F.2d 739, n.10 (2d Cir. 1980) (expressing reservations regarding the reluctance of the reviewing judge to review the need for urgency); *see also United States v. Messina*, 566 F. Supp 740, 744-45 (D.C.N.Y. 1983) (questioning non-justiciability, but giving judicial deference to extraditing government's and this Government's determination of urgency).  The allegations contained within the complaint, though financial, are significant.  Gohir is known to vast connections throughout the world, including in countries without an extradition treaty with Germany.  Based on the record, the Court is also inclined to defer to the extraditing county and the United States determination of urgency in this matter.

## 2. Detention Pending Extradition

Having determined that it has subject matter jurisdiction, the Court turns to the question of bail.  There is little statutory guidance on the issue of bail or release pending future proceedings in extradition matters.  *See Nacif-Borge*, 829 F. Supp. at 1213.  The Bail Reform Act does not apply. *Id*.  Nor does 18 U.S.C. § 3184 provide for bail.  "It is well-settled that, unlike cases involving domestic crime, in international extradition proceedings there is a presumption against bail."  *In the Matter of Extradition of Azizi*, 2014 WL 1995083 (N.D. Cal. 1995083) (citing *Wright v. Henkel*,

190 U.S. 40, 63 (1903); *see also Nacif-Borge*, 829 F.Supp. at 1214.  The primary concern in international extradition matters is delivery of the extraditee to the requesting nation.  *Id*. at 1213.  Though unusual and extraordinary, it is not impossible to obtain bail in international extradition cases.  *Id*.  To obtain bail the extraditee must show by clearing and convincing evidence (1) that one or more "special circumstances" exist justifying his release and (2) if "special circumstances" exist, whether the extraditee poses a risk of non-appearance or danger to the community.  *Id*. at 1215.

"What constitutes 'special circumstances' is not precisely defined in caselaw.  But, the fact that a detainee is not a flight risk is not the standard for release."  *Extradition of Azizi*, 2014 WL 1995083 *1 (citing *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989)).  Indeed, "special circumstances must exist *in addition* to absence of risk of flight."  *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990) (emphasis added).  Examples of "special circumstances" which may justify bail in international extradition proceedings are: (1) "raising substantial claims upon which the appellant has a high probability of success," (2) "a serious deterioration of health while incarerated," and (3) "unusual delay in the appeal process."  *Salerno*, 878 F.2d at 317.  The list is not exhaustive, but the circumstances offered must indeed be "special" and supported by a clear and convincing evidence.  *See, e.g., Nacif-Borge*, 829 F.Supp. at 1215.  "The standard for release on bail for persons involved in [foreign] extradition proceedings is a more demanding standard that for ordinary accused criminals awaiting trial."  *Id*. at 1214.  Thus, it has been observed that bail in international extradition cases has been limited to matter involving the "most pressing circumstances" and where the "requirements of justice are absolutely peremptory."  *Id*. (citations omitted).

The undersigned will first consider whether Gohir has established any special circumstances.  Risk of flight will be examined only if it is determined that there are special circumstances supporting release.  Gohir requests release on several grounds.  Noting a recent trend of a "more liberal approach" in determining whether there are special circumstances in the context of a provisional arrest, Gohir argues that his circumstances should be viewed collectively in determining whether bail is appropriate.  As noted in *Nacif-Borge*, "courts are now recognizing that

16

1   the cumulation of several factors may constitute special circumstances that justify bail pending

2   extradition proceedings." *Nacif-Borge*, 829 F.Supp. at 1216 (citing *Taitz*, 130 F.R.D. 442).

3   Nevertheless, special circumstances must be extraordinary, not merely factors that apply to all

4   incarcerated defendants. *In the Matter of Extradition of Smyth*, 976 F.2d 1535, 1536 (9th Cir.

5   1992).

6          Citing *In the Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210 (D. Nev. 1993) and

7   *In re Extradition of Kapoor*, 2011 WL 2296535 (E.D.N.Y.), Gohir primarily argues that he should

8   be granted bail in this matter because it would be available to him in on the alleged charges in

9   Germany.  While *Nacif-Borge* did indicate that the availability of bail in the requesting state was a

10  special circumstance warranting release, other courts have disagree with that reasoning.  Indeed, the

11  court in *In re Extradition of Siegmund*, 887 F.Supp. 1383 (D. Nev. 1995), sitting in the same

12  District as the court *Nacif-Borge*, expressly disagreed with the idea that the availability of bail in

13  the requesting country constitutes a special circumstance.  The court in *Siegmund* noted that

14  permitting bail in the United States based on whether the underlying offense is bailable in the

15  requesting country "would 'force courts to make searching reviews of foreign laws to determine

16  whether bail is appropriate for a given defendant in a given country for a given offense.'"

17  *Siegmund*, 887 F.Supp. at 1386 (citing *In re Extradition of Rouvier*, 839 F.Supp. 537 (N.D. Ill.

18  1993)).  This creates an undesirable, potentially unworkable practice. *Id*. at 1386-87.  *Siegmund*

19  also noted that the concern in international extradition cases is not to mirror the internal bail

20  practices of the requesting country, but to deliver the extraditee so long as the conditions precedent

21  in the treaty are satisfied.  Several other courts have agreed that the availability of bail in the

22  requesting country on the underlying offense is not a special circumstance. *See Azizi*, 2014 WL

23  1995083 *2; *In the Matter of Extradition of Sutton*, 898 F.Supp. 691, 695 (E.D. Mo. 1995)

24  (agreeing that the availability of bail in the requesting country on the underlying offense is not a

25  special circumstance); *In re Extradition of Garcia*, 615 F. Supp.2d 162 (S.D.N.Y. 2009) (noting

26  that if the availability of bail in the requesting country on the underlying offense were a special

27  circumstance, "the exception would soon swallow the rule"); *In re Extradition of Sacirbegovic*, 280

28  F.Supp.2d 81, 86-87 (S.D.N.Y. 2003) (mere possibility of bail in requesting country not a special

circumstance).  The undersigned agrees with *Siegmund* that *Nacif-Borge* is a seminal, scholarly exploration of the law of bail in extradition cases; but the availability of bail in the requesting country on the underyling offense is not a special circumstance.

Gohir has referenced on multiple occasions that he is diabetic and will not be able to receive adequate treatment if detained.  There is nothing indicating that the detention facility is unable to meet Gohir's medical needs.  Nor is there any indication that his health has deteriorated or that he has been unable to receive treatment during his detention.  Nor has Gohir raised substantial claims upon which he has a high probability of success.  His primary claim is that the complaint should be dismissed because Germany did not produce "authenticated documentation" that the request for provisional arrest came through the proper channel.  The Court has already addressed this claim and found it lacking.

On the record presented here, the Court finds nothing extraordinary which distinguishes this case from any other.  Gohir has not convincingly demonstrated that his health or reciprocity considerations as to bail warrant his release.  He has not demonstrated a high probability of success on any substantial claim.  The remainder of his arguments pertain to whether he is a risk of flight which, as discussed above, is not a factor for release.  Whether considered individually or cumulatively, none of the circumstances offered by Gohir constitutes a "special circumstance" warranting bail.

Even if  inclined to find "special circumstances," the Court is not confident that Gohir does not pose a risk of flight.  The charges he would face if extradited appear significant with, according to the Government, the potential for sentence in excess of ten years if convicted.  He has ties to several countries without extradition agreements with Germany, including the United Arab Emirates and Pakistan.  He is a man of considerable means, with access to substantial resources.  There is also indication that Gohir has communicated with others expressing the need to disappear for a while.

Accordingly, the Court finds there are no special circumstances warranting Gohir's release and his motion for bail is denied.  He is remanded to custody pending receipt of an extradition request from Germany, which must be received within forty (40) days after his apprehension.

Upon application, an extension of up to twenty (20) days may be granted.

Based on the foregoing and good cause appearing,

**IT IS HEREBY ORDERED** that Mohammad Sofdar Gohir's Motion to Dismiss the Complaint (#1) is **denied**.

**IT IS FURTHER ORDERED** that Mohammad Sofdar Gohir's Request for Bail is **denied** and he is remanded to custody pending further proceedings.

DATED: May 21, 2014.

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**